IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re MALLINCKRODT PLC, *et al.*, | : | Chapter 11 |
| | : | Bankr. Case No. 20-12522-JTD |
| Debtors. | : | (Jointly Administered) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | : | |
| CITY OF ROCKFORD, *et al.*, | : | |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 21-398-LPS |
| | : | |
| MALLINCKRODT PLC, *et al.,* | : | |
| | : | |
| Appellees. | : | |

**MEMORANDUM**

## I.    INTRODUCTION

Pending before the Court is an appeal (D.I. 1) by appellants, the Acthar Plaintiffs,[1] from

the Bankruptcy Court's March 5, 2021 Order (B.D.I. 1599) (APP1424-25) (D.I. 1-1)[2] ("OCP

Order"), entered in the chapter 11 cases of debtor Mallinckrodt plc and certain of its affiliates

(together, "Debtors"), which authorized the Debtors' retention of certain ordinary course

professionals ("OCPs") "*nunc pro tunc*" to the petition date.  Acthar Plaintiffs challenge the

_____

[1] The "Acthar Plaintiffs" consist of the following: the City of Rockford ("Rockford"),
Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of
Operating Engineers Local 542 ("IUOE Local 542"), United Association of Plumbers &
Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322"), and Acument Global
Technologies ("Acument"), individually and on behalf of the classes of third-party payors
("TPPs") and their beneficiaries that Rockford, Steamfitters Local 420, and Plumbers Local 322
seek to represent in their respective cases currently pending in federal district courts in the
Northern District of Illinois, the Eastern District of Pennsylvania, and the District of New Jersey,
respectively.

[2] The docket of the Chapter 11 cases, captioned *In re Mallinckrodt, plc, et al.*, No.  20-12522-
JTD (Bankr. D. Del.), is cited herein as "B.D.I. __."  The appendices filed in support of Acthar
Plaintiffs' opening brief (D.I. 17) and the Debtors' answering brief (D.I. 20) are cited herein as
"APP__."

Bankruptcy Court's determination to overrule their various objections to the Debtors' retention

of OCPs generally and the retention of the law firm of Skadden, Arps, Slate, Meagher & Flom

LLP ("Skadden") specifically.  Acthar Plaintiffs further challenge the *nunc pro tunc* nature of the

relief granted, arguing that a recent Supreme Court decision overruled Third Circuit precedent

giving bankruptcy courts discretion to grant such relief.  For the reasons that follow, the Court

will affirm the OCP Order.

## II.     BACKGROUND

### A.     Ordinary Course Professionals Motion

On October 12, 2020, Debtors filed their chapter 11 petitions in the Bankruptcy Court.

Two days later, on October 14, 2020, Debtors filed a motion seeking to retain certain ordinary

course professionals ("OCPs") to represent them in matters arising in the ordinary course of their

business.  (APP1-38) ("OCP Motion")  The OCP Motion set forth the reasons these professionals

were essential for Debtors to continue their normal business activities and further their chapter

11 cases.  (APP12)  The OCP Motion asserted that failure to retain the OCPs would severely

hinder Debtors' efforts, as there was a significant risk that OCPs would be unwilling to provide

services or would suspend services without a court order authorizing retention.  (APP12)

Accordingly, Debtors sought authorization to "continue to employ and retain" certain OCPs

listed in a schedule attached to the OCP Motion (APP6), and requested that authorization be

entered "*nunc pro tunc*" to the petition date (i.e., two days before the OCP Motion was filed) for

professionals who had been engaged prepetition (APP7).  The OCP Motion made clear that the

relief requested was "to avoid any subsequent controversy as to the Debtors' employment and

payment of the Ordinary Course Professionals during these chapter 11 cases."  (APP12)

The OCP Motion proposed a retention procedure under which each OCP was required to

submit a "Declaration of Disinterestedness" certifying that the OCP "does not represent or hold any interest adverse to the Debtors or their estates with respect to the matter(s) on which the professional is to be employed."  (APP6-7; *see also* APP35-38 (form Declaration of Disinterestedness attached to the OCP Motion))  The OCP Motion established a procedure under which objections could be made to individual OCPs within 14 days of service of the OCP's Declaration of Disinterestedness.  (APP7)  Incurred fees and expenses, which were subject to payment caps, could be paid without formal application and would be memorialized in periodic payment summaries filed with the Bankruptcy Court.  (APP8-9, APP23-24)

The OCP Motion included a Notice of Motion and Hearing stating that "objections or responses to the relief requested in the Motion, if any, must be made in writing and filed . . . on or before November 3, 2020 at 4:00 p.m."  (APP16)  The notice further provided that, in the absence of objections, the Bankruptcy Court "may grant the relief requested in the motion without further notice or hearing."  (APP17)

A group designated as the "Multi-State Governmental Entities Group" filed a limited objection, arguing that it should be included as a party entitled to notice under the retention procedures set forth therein.  (APP39-43)  The U.S. Trustee filed a limited objection, arguing that the form Declaration of Disinterestedness should include "a statement of disinterestedness required by section 327(a) of the Bankruptcy Code with respect to any entity that is either not a law firm, or is a law firm that did not represent the Debtors prior to their bankruptcy filing." (APP44-51)  The Acthar Plaintiffs asked that the deadline for objections be extended.  (APP53; APP1009-12)  Debtors agreed, extending the deadline until November 5, 2020 (APP1009) – yet the Acthar Plaintiffs did not file any objections to the OCP Motion.

On November 10, 2020, Debtors certified that the limited objections to the OCP Motion

had been resolved and provided a revised proposed order, which was uncontested.  (APP52-99, 137-38; *see also* APP60, 81 (revising OCP Order to include Multi-State Governmental Entities Group as party entitled to notice); APP76-77, 98-99 (revising form Declaration of Disinterestedness to reflect potential additional requirements if an OCP "is not a law firm")

### B.    Ordinary Course Professionals Order

On November 10, 2020, the Bankruptcy Court entered the revised proposed OCP Order (APP100-08), which provided for retention *nunc pro tunc* to the petition date and gave each OCP that had already commenced postpetition services for Debtors 30 days to file the required declaration (APP102).

On December 3, 2020, after having failed to object to the OCP Motion itself, the Acthar Plaintiffs filed an Omnibus Objection to Retention of "Ordinary Course Professionals" by Debtors.  (APP154-89)  The Acthar Plaintiffs argued, among other things, that retaining the OCPs would not "benefit . . . the estate" because the OCPs' "services are not needed at this time," given that "litigation pending against the Debtors is stayed."  (APP156-58)  The Acthar Plaintiffs also argued that the OCPs were not retained "in the 'ordinary course' of their business" and had not filed adequate disclosures.  (APP162-74)  The Acthar Plaintiffs later filed a Second Omnibus Objection, raising substantially the same arguments.  (APP242-61)

On February 4, 2021, the Acthar Plaintiffs filed an objection specific to Debtors' retention of Skadden.  (APP411-81)  The objection attacked the adequacy of Skadden's disclosures, citing in particular language that came from the form Declaration of Disinterestedness approved as part of the OCP Order.  (APP415-16)  The Acthar Plaintiffs later filed a notice of deposition for a Skadden partner and also moved to compel discovery. (APP880-92; APP896-971)

### C.       Approval of Specific Ordinary Course Professionals

Following full briefing on the Acthar Plaintiffs' objections, the Bankruptcy Court held a

hearing on February 25, 2021.  (APP1316-99)  Prior to the hearing, the Bankruptcy Court

indicated that it would be ruling based on the parties' submissions and that there would be no

testimony, exhibits, or oral argument.  (APP1306, 1382)  In its bench ruling, the Bankruptcy

Court held that "[t]he OCP order is a final order" with respect to the issues the Acthar Plaintiffs

raised in their objections, and that "[t]he Acthar Plaintiffs did not address in their objections

why, if they objected to the debtors' ability to retain *any* OCPs, they did not object to the OCP

motion at the time it was pending before the Court."  (APP1383) (emphasis added)  Based on

that failure and its final determination of relevant issues in the OCP Order, the Bankruptcy Court

explained that to "collateral[ly] attack . . . the ability of this Court to enter the OCP order in the

first instance," the Acthar Plaintiffs needed to seek relief under "Federal Rule of Civil Procedure

60, made applicable to these proceedings by Federal Rule[] of Bankruptcy Procedure 9024."

(APP1383-84)  The Bankruptcy Court overruled the Acthar Plaintiffs' objections because they

did not attempt to satisfy Rule 60's requirements.  (APP1384)

The Bankruptcy Court, "having read and considered the objections, the responses, and

the various declarations filed by the OCPs," "overrule[d] the objections on the merits, as well."

(APP1384)  With respect to the Acthar Plaintiffs' argument that retention of OCPs would not

"benefit . . . the estate" because their "services are not needed at this time" because "litigation

pending against the Debtors is stayed," the Bankruptcy Court explained that "[j]ust because the

actions are stayed . . . does not mean that the debtors do not need [the OCPs'] assistance; for

example, in negotiating potential resolutions of those claims," as the stay "does not prevent the

debtor from trying to settle them," and because "[t]he debtors will need to be prepared to go

forward with those actions, if settlement discussions are not fruitful," since "those cases will not remain stayed forever."  (APP1385)  The Bankruptcy Court next rejected the Acthar Plaintiffs' arguments regarding the adequacy of Skadden's declarations and disclosures.  (APP1385-86) The Bankruptcy Court held that all of the disputed litigation counsel OCPs had complied with the OCP Order by submitting declarations representing that the OCP does not "hold any interest adverse to the debtors or their estates with respect to the matter or matters on which the professional is to be employed."  (APP1386)  Finally, the Bankruptcy Court rejected the Acthar Plaintiffs' argument that *nunc pro tunc* relief was categorically unavailable following a recent Supreme Court decision.  (APP1386-87)  Having overruled the Acthar Plaintiffs' objections as "without merit," the Bankruptcy Court denied their motion to compel discovery as moot. (APP1387)

The Bankruptcy Court then provided counsel for the Acthar Plaintiffs an opportunity to be heard.  (APP1387-88)  The Acthar Plaintiffs sought to introduce 55 exhibits relating to Skadden or to make a specific proffer as to the contents of each exhibit.  (APP1388, 1390-91) The Bankruptcy Court denied those requests but allowed counsel to "proffer" what the "exhibits and the deposition" would have shown and "how they'd be relevant to the motion."  (APP1388-91)  In seven uninterrupted pages of the transcript, the Acthar Plaintiffs generally described the exhibits and repeated the arguments made in their objection to Debtors' retention of Skadden. (APP1391-97)  On March 5, 2021, the Bankruptcy Court entered an order authorizing the Debtors to retain the OCPs.  (APP1424-25)

### D.    Appeal

The Acthar Plaintiffs timely appealed the OCP Order.  (D.I. 1)  The merits of the appeal are fully briefed.  (D.I. 16, 19, 21)  No party requested oral argument.  The Court did not hear

oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

## III.   JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees."  A bankruptcy court has "considerable discretion in approving . . . retention under the standards of section 327 in light of the specific facts and circumstances of the case." *Century Indem. Co. v. Boy Scouts of Am. (In re Boy Scouts of Am.)*, 2021 WL 1820574, at *5 (D. Del. May 6, 2021).  A bankruptcy court's decision on a § 327(e) application "is reviewed for abuse of discretion." *Phila. Newspapers, LLC v. Off. Comm. of Unsecured Creditors*, 408 B.R. 585, 596-97 (E.D. Pa. 2009) (citing *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.)*, 304 F.3d 246, 250 (3d Cir. 2002)).  "An abuse of discretion exists where the . . . court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id*. at 597 (internal quotation marks omitted).  "A decision to grant *nunc pro tunc* approval is in the discretion of the bankruptcy court, and is reviewed for abuse of discretion only." *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir. 1988) (citation omitted).

## IV.   DISCUSSION

### A.   The Bankruptcy Court Did Not Err in Overruling
the Acthar Plaintiffs' Objections as Untimely and Meritless

The Acthar Plaintiffs' objections were overruled by the Bankruptcy Court on two bases: (1) the objections were untimely and could not be sustained under Rule 60(b), and (2) the objections were without merit.  The Acthar Plaintiffs challenge only the first reason.

### 1.    The Acthar Plaintiffs Failed to Timely Object to the OCP Motion

The OCP Motion included a framework for approving specified OCPs, including procedures under which the OCPs could file Declarations of Disinterestedness; the information to be included therein; and instructions that it must include a statement that the applicant does not "hold[] or represent[] any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed."  (APP37)  The OCP Motion also made clear that upon resolution of any objections to an individual OCP's declaration, the OCP would be approved *nunc pro tunc* to the petition date.  (APP104)

Under those procedures, any objections to the OCP Motion had to be filed by November 3, 2020.  (APP16-17)  Multiple objections were filed.  (APP39-43; APP44-51)  The Acthar Plaintiffs asked for (and received) an extension of time.  (APP53; APP1009-12)  But the Acthar Plaintiffs never filed any objections to any aspect of the relief Debtors sought in the OCP Motion.  With all the filed objections resolved, the Bankruptcy Court entered the OCP Order. (APP100-08)

On these undisputed facts, the Bankruptcy Court correctly held that the Acthar Plaintiffs' later objections were untimely.  The vast majority of the objections could have (and should have) been raised in response to the OCP Motion itself.  For example, the Acthar Plaintiffs argued that language in Skadden's declaration was "vague, unrevealing, even potentially misleading and disqualifying."  (APP415-16)  But as the Debtors correctly point out, the quoted language came directly from the form Declaration of Disinterestedness attached to the OCP Motion and approved by the OCP Order.  (*See* APP97-99)  Next, the Acthar Plaintiffs objected to Debtors retaining litigation counsel OCPs, categorically, on the ground that retention would not benefit the estate.  (*See* APP156-58)  But that, too, was a focus of the OCP Motion, which explained

why such retentions were in the best interest of the estate, and attached a schedule listing

numerous OCPs that would provide litigation services.  (*See* APP28-34)  These objections – and

others that went to Debtors' "ability to retain ***any*** OCPs," "the ability of th[e Bankruptcy] Court

to enter the OCP order in the first instance as violative of the provisions of the Bankruptcy

Code," and the procedures for retention set forth in the OCP Motion, including the form

Declaration of Disinterestedness and the *nunc pro tunc* request – were all improper "collateral

attack[s]" on the OCP Order itself.  (APP1383-84) (emphasis added)

Acthar Plaintiffs contend that they could not have objected, or at least were not required

to object, until after individual OCPs had filed their declarations in compliance with the OCP

Order.  (D.I. 16 at 17-19)  But as the Acthar Plaintiffs concede, the OCP Order itself

"authorized" what they call the "extra-statutory procedure for retaining ordinary course

professionals."  (*Id*. at 18)  The OCP Order did more than "suggest[] that *nunc pro tunc* relief

would be granted" (*id*.); it provided that once any objection to a Declaration of Disinterestedness

was resolved, "the Debtors shall be authorized to retain the Ordinary Course Professional on a

final basis, without further order of the Court, *nunc pro tunc* to the later of the petition date and

the date of engagement."  (APP104)  As the Bankruptcy Court held, if the Acthar Plaintiffs

believed the procedures finally established in the OCP Order were improper, they could and

should have objected at that time – just as other parties and the U.S. Trustee did.

The Acthar Plaintiffs' suggestion that they would not have had "standing" to object at an

earlier time lacks merit.  (D.I. 16 at 18-19)  As an initial matter, the question is not whether the

Acthar Plaintiffs would have had standing to appeal the OCP Order, but whether they could have

filed an objection to the OCP Motion (like everyone else).  The only case cited by the Acthar

Plaintiffs in support is inapposite.  (*Id*. at 18) (citing *Chadwick v. Janecka*, 312 F.3d 597, 602 (3d

Cir. 2002))  As Debtors point out, the purpose of the OCP Motion was to authorize Debtors to retain certain OCPs (listed in the attached schedule), pursuant to a particular procedure (set out in the motion), *nunc pro tunc* to the petition date.  The notion that the Acthar Plaintiffs were powerless to object because the OCPs might voluntarily provide more information than required by the OCP Order or seek less relief than authorized by the OCP Order is unavailing.  (D.I. 16 at 19).  If the Acthar Plaintiffs did not have sufficient injury to object to the OCP procedures then, the mere filing of the expected declarations did not change that.

The Acthar Plaintiffs also fault the Bankruptcy Court for applying Rule 60.  As Debtors explain, the Acthar Plaintiffs misunderstand the Rule's relevance.  (D.I. 16 at 19-21)  The Acthar Plaintiffs forfeited the right to object to the OCP Motion by failing to timely object.  But if the Acthar Plaintiffs were able to satisfy the requirements of Rule 60 then, perhaps, the Bankruptcy Court could have excused that forfeiture.  Fed. R. Civ. P. 60(b); *see also* Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60 in bankruptcy cases).  The Bankruptcy Court simply held that the Acthar Plaintiffs made no attempt to satisfy the Rule 60(b) requirements.  (APP1383-84)  The Acthar Plaintiffs agree that they could not (and did not try to) satisfy those requirements.  (D.I. 16 at 20)

### 2.     Acthar Plaintiffs Have Not Challenged the Bankruptcy Court's Ruling on the Merits

The Bankruptcy Court did not rest on the Acthar Plaintiffs' forfeiture; the Bankruptcy Court also overruled the Acthar Plaintiffs' objections on the merits.  (APP1384-86)  With the exception of *nunc pro tunc* relief, discussed below, the Acthar Plaintiffs do not challenge the Bankruptcy Court's merits determination on appeal.  The unchallenged merits determination thus provides an independent ground for affirmance.  *See First Fid. Bank v. Pub. Serv. Co. of N.H. (In re Pub. Serv. Co. of N.H.)*, 879 F.2d 987, 989-90 (1st Cir. 1989) (*per curiam*) (affirmance

required where appellant challenged only one of two alternate bases for bankruptcy court's decision); *see also Chong v. Dist. Dir., INS*, 264 F.3d 378, 391 (3d Cir. 2001).

The Acthar Plaintiffs' "Statement of the Case" is replete with objections made in the Bankruptcy Court with respect to "litigation counsel" in general (*see* D.I. 16 at 6) or Skadden in particular (*see id.* at 7-9).  But they do not advance any of those objections on appeal.  The closest they come is a passing reference in the Opening Brief's "Statement of the Issues" to the "sufficien[cy]" of "Skadden's disclosures."  (*Id.* at 2)  But that issue is nowhere to be found in the argument section of their brief.  Accordingly, as with the other objections abandoned on appeal, that issue has been waived.  *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993); *see also Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (holding that arguments mentioned in passing, but not squarely argued, will be deemed waived); *Forever Green Athletic Fields, Inc. v. Dawson*, 514 B.R. 768, 781 (E.D. Pa. 2014) (finding arguments waived where appellants "list[ed] [them in] issues for review but . . . failed to match many of those issues to arguments with citations to the authorities . . . [and] cited no case law or statutes in support of their contention[s]"), *aff'd sub nom. In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015).

### B.  The Bankruptcy Court Did Not Violate the Acthar Plaintiffs' Due Process Rights

The Acthar Plaintiffs argue that the Bankruptcy Court deprived them of due process when it ruled on their objections without giving them an opportunity to cross-examine Skadden's declarant or enter certain exhibits into evidence at the hearing.  (D.I. 16  at 24-26)  The Court does not agree.

"Due process mandates that a judicial proceeding give all parties an opportunity to be heard on the critical and decisive allegations which go to the core of the parties' claim or

defense." *Villanueva Compania Naviera, S.A. v. Bethlehem Steel Corp. (In re Complaint of Bankers Tr. Co.)*, 752 F.2d 874, 890 (3d Cir. 1984).  An unsecured creditor has no constitutional right to introduce specific evidence in the context of a bankruptcy court's decision to approve a debtor's retention of an ordinary course professional.  The only bankruptcy cases the Acthar Plaintiffs cite stand for the simple proposition that debtors and creditors have a constitutional right to be heard before being deprived of their property.  *See In re Tribune Media Co.*, 902 F.3d 384, 389 (3d Cir. 2018) (appeal by creditor of disallowance of creditor's claims); *In re Bartle*, 560 F.3d 724, 727 (7th Cir. 2009) (appeal by debtor of dismissal of debtor's Chapter 11 proceeding); *In re Boomgarden*, 780 F.2d 657, 658 (7th Cir. 1985) (appeal by debtor of lifting of automatic stay for sale of debtor's property).  Acthar Plaintiffs argue that any payment of the OCPs will be "to the detriment of the distribution to the general body of unsecured creditors." (D.I. 21 at 8-9)  But the OCP Order did not deprive the Acthar Plaintiffs of their property.  Any connection between the retention of Skadden (the only OCP about which the Acthar Plaintiffs sought to introduce evidence) and the Acthar Plaintiffs' claims is attenuated at best.  Without any cognizable property right at issue, the Acthar Plaintiffs cannot establish that the retention application proceedings even implicated their due process rights in the first place.

In any event, no violation occurred.  Most procedural and evidentiary errors do not give rise to a due process violation.  *See, e.g. Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006) ("[A] mere procedural or evidentiary error must not be confused with a denial of due process.").  None of the bankruptcy cases the Acthar Plaintiffs cite found a due process violation.  *See In re Tribune Media Co.*, 902 F.3d at 396-98; *In re Bartle*, 560 F.3d at 730-31; *In re Boomgarden*, 780 F.2d at 662.  To the extent the Acthar Plaintiffs had any constitutional right, it was the right to be heard.  And they were.  The Acthar Plaintiffs filed three different rounds of objections.  They

12

were present at (and given the opportunity to make a proffer during) the hearing.  The Bankruptcy Court was already familiar with the relevant facts of the case and indicated its review of all pleadings.  The Acthar Plaintiffs were not constitutionally entitled "to a particular type of hearing."  *In re Bartle,* 560 F.3d at 729; *see Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 788 (D.D.C. 1993) ("Th[e] right to present specific evidence is not constitutionally protected").

Finally, the Court agrees with the Debtors that any error would be harmless.  Federal Rule of Civil Procedure 61, which applies in bankruptcy proceedings, instructs courts to "disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61; *see* Fed. R. Bankr. P. 9005 (incorporating Fed. R. Civ. P. 61); *In re Bartle*, 560 F.3d at 730. For the Acthar Plaintiffs' "substantial rights" to have been affected, there would have to be evidence they were precluded from presenting that would have changed the outcome; that is, evidence that would have caused the Bankruptcy Court to disapprove Skadden's retention.  The Acthar Plaintiffs made an extensive proffer.  (*See* APP1391-97)  But, on appeal, the Acthar Plaintiffs do not identify any specific evidence they were precluded from introducing that would have changed the outcome.  The Acthar Plaintiffs' failure to provide any "reason to believe" that the purported "deprivation of the opportunity to be heard . . . prejudiced" them is yet another reason why their due process claim lacks merit.  *In re Bartle*, 560 F.3d at 730.

### C.      *Nunc Pro Tunc* Relief Was Neither Error Nor Abuse of Discretion

The Acthar Plaintiffs' argument that *nunc pro tunc* relief is categorically unavailable was forfeited by their failure to timely object to this aspect of the OCP Motion.  As further explained below, the argument also fails on the merits.

## 1.   The Bankruptcy Court Did Not Abuse Its Discretion By Granting Retroactive Approval

Under controlling Third Circuit law, "bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power . . . [w]here equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done."  *In re Arkansas Co*., 798 F.2d 645, 650 (3d Cir. 1986).  "[R]etroactive approval" may be granted if "prior approval would have been appropriate" and "the delay in seeking approval was due to hardship beyond the professional's control."  *Id*. at 650; *see also F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir. 1988).  Such "retroactive approval" is reviewed for abuse of discretion.  *Arkansas Co*., 798 F.2d at 650.

The default rule for bankruptcy courts in Delaware is that retention is effective "as of the date the motion was filed."  Del. Bankr. L.R. 2014-1(b).  Bankruptcy courts routinely authorize retroactive approval to the bankruptcy petition date,[3] and district courts and courts of appeals routinely affirm such approvals under an abuse of discretion standard.[4]  Moreover, the Office of the U.S. Trustee's long-held position is that it will "not ordinarily object" if "retention applications" for "professionals" are "filed within 30 days of the petition date."  *In re United Cos. Fin. Corp*., 241 B.R. 521, 526 (Bankr. D. Del. 1999).  Hence, as counsel for Acthar Plaintiffs has admitted below, *nunc pro tunc* relief "has been the custom and practice in this jurisdiction for a long time."  (APP868)

---

[3] *See, e.g., In re Art Van Furniture*, *LLC*, 617 B.R. 509, 519-20 (Bankr. D. Del. 2020).

[4] *See, e.g., Boy Scouts of Am*., 2021 WL 1820574, at *6-8; *In re Woodworkers Warehouse*, *Inc.,* 323 B.R. 403, 405 (D. Del. 2005).

14

The Bankruptcy Court was well within its discretion in following the established case law and finding retroactive approval appropriate here.  There was no delay in seeking approval of the OCPs as counsel.  Debtors filed an application just two days after filing the bankruptcy petitions. (APP1-38)  The OCP Motion requested, and the OCP Order granted, *nunc pro tunc* relief. (APP7; APP104)  No party objected to that aspect of the OCP Order.

The Acthar Plaintiffs quote at length from *In re Arkansas* and argue that "*nunc pro tunc* should be the exception, not the rule."  (D.I. 16 at 46-47)  But this case looks nothing like *In re Arkansas Co.* – or *F/S Airlease II.*  In *In re Arkansas*, 798 F.2d at 646, a law firm represented the creditors committee for 13 months after the bankruptcy petition had been filed before filing any motion with the bankruptcy court seeking approval of its employment under § 1103(a).  In *F/S Airlease II*, 844 F.2d at 102, a broker waited 10 months after starting work, and seven months after the bankruptcy court had approved the lease he negotiated, before asking the court to pay his administrative expenses under Section 503.  In both cases, the Third Circuit was focused on the statutory pre-approval requirements, which were designed to ensure that the bankruptcy court "know[s] the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same."  *Id.* at 106 (internal quotation marks omitted).  There was no comparable pre-approval concern in this case.  All parties were on notice – since the third day of the chapter 11 proceedings – that Debtors were seeking approval to retain the OCPs.

Although the Acthar Plaintiffs assert the Debtors need to show "extraordinary circumstances" to obtain *nunc pro tunc* relief (D.I. 16 at 39-40), the case law suggests otherwise. Courts require a heightened showing when there has been a months-long delay before seeking approval; it is not required when an application is filed within a "reasonable time" – usually

defined as within 30 days of the petition date (consistent with the U.S. Trustee's position). *See, e.g., In re Sound Radio, Inc*., 145 B.R. 193, 205 n.18 (Bankr. D.N.J. 1992) (explaining that "thirty days from the commencement of the case" is "a reasonable time" for application, but "[a]fter thirty days," delay requires explanation); *In re Martin*, 102 B.R. 653, 656 (Bankr. W.D. Tenn. 1989) (same); *In re Sinor,* 87 B.R. 620, 623 (Bankr. E.D. Cal. 1988) (same).

### 2.   The Supreme Court's Recent Decision Does Not Overrule Third Circuit Precedent

Acthar Plaintiffs further argue that the Supreme Court's recent decision in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696 (2020) (*per curiam*), effectively overruled Third Circuit precedent and long-standing bankruptcy practice and now categorically precludes bankruptcy courts from retroactively approving the retention of professionals.  Acthar Plaintiffs same raised this precise argument in connection with their appeal of another firm's *nunc pro tunc* retention in these same chapter 11 proceedings.  *See City of Rockford v. Mallinckrodt, PLC, et al*., Civ. No. 21-268-LPS.  In a Memorandum issued this same date, the Court rejected the Achtar Plaintiffs' arguments under *Acevedo*, and it does so here again, for the same reasons.  (*See id.* D.I. 15 at 16-20)

In short, *Acevedo* did not consider any issues of bankruptcy law or *nunc pro tunc* relief.  *Acevedo*'s limited discussion of *nunc pro tunc* orders is best understood as specific to jurisdiction.  Other courts have reached the same conclusion, determining that *Acevedo* simply reiterates the well-understood distinction between a court "creat[ing] jurisdiction where none exists" and granting retroactive relief on equitable grounds when the court indisputably has jurisdiction to act.  *See Merriman v. Fattorini (In re Merriman)*, 616 B.R. 381, 391 (B.A.P. 9th Cir. 2020); *see also, e.g., In re Hunanyan*, 2021 WL 2389273, at *2 (Bankr. C.D. Cal. June 10, 2021) ("*Acevedo* does not change the existing authority of the court to approve employment that

16

has commenced before the motion was brought."); *In re SS Body Armor I, Inc.,* 2021 WL 2315177, at *3 (Bankr. D. Del. June 7, 2021) ("*Acevedo* does not prohibit courts from entering *nunc pro tunc* orders where there are no jurisdictional defects.").

The Court disagrees with the Acthar Plaintiffs' claim that, after *Acevedo*, bankruptcy courts have refused to approve retention of professionals "to obtain retroactive effect."  (D.I. 16 at 41-43)  Of the 13 cases cited in Acthar Plaintiffs' lengthy string cite, only three involved the approval of professionals.  While those cases disagreed with the use of "*nunc pro tunc*" orders after *Acevedo*, none held that *Acevedo* precludes retroactive compensation.

Indeed, as the district court recognized in *In re Benitez*, "'[n]unc pro tunc* retentions' are common practice in bankruptcy matters largely resulting from the statutory framework for compensation of estate professionals set forth in sections 327 and 330," as "the delay between commencement of services to the estate, the filing of a motion for court approval and the entry of the order approving the retention may take several weeks."  2020 WL 1272258, at *1 (Bankr. E.D.N.Y. Mar. 13, 2020).  "In most cases it is impractical and possibly detrimental to the estate for the professional to delay providing what may be critical services until entry of the order approving their retention."  *Id*.  Far from barring compensation for pre-approval work, that court held that "*nunc pro tunc* or retroactive retention is not necessary" because "there is no *per se* prohibition, in the statute or precedential caselaw, against awarding reasonable compensation to an estate professional for actual and necessary services rendered to the estate prior to the date of court approval of retention."  *Id*. at *5 (holding that bankruptcy court may "award[] reasonable compensation to an estate professional for actual and necessary services rendered to the estate prior to the date of court approval of retention").  *See also In re Roberts*, 618 B.R. 213, 217 (Bankr. S.D. Ohio 2020) (explaining that, although "the use of *nunc pro tunc* orders to

17

retroactively seek employment of professionals is an improper use of the mechanism," that "does not mean that services rendered prior to entry of an order authorizing the employment will be uncompensated," since "applicable bankruptcy statutes and rules laying the foundations for employment and compensation do not require employment to be authorized prior to performance of services"); *In re Grinding Specialists, LLC,* 625 B.R. 6, 15 (Bankr. D.S.C. 2021) (approving employment of counsel "effective as of the date the request to employ was presented to, and could have been acted on, by the Court")

The Honorable Mary F. Walrath has similarly distinguished *Acevedo*, noting: "There are many instances in bankruptcy . . . not only [Bankruptcy] Rule 6003, but many instances where because of the notice requirements the Court is unable to enter an order on no notice and will allow any relief to be *nunc pro tunc* to the filing of the retention application." (D.I. 20, APP1500 (*In re Hertz Corp.*, No. 20-11218 (Bankr. D. Del.), 12/28/20 Hr'g Tr. at 61:11-15))  Indeed, with respect to § 327(e) in particular, retroactive compensation is not only permissible – it is practically required.  "The concept of retroactive compensation is incorporated into the Federal Rules of Bankruptcy Procedure," including "Bankruptcy Rule 6003(a), [under which] an application for employment may not be approved within the first 21 days of a bankruptcy case, absent a need to avoid immediate and irreparable harm."  *In re Miller*, 620 B.R. 637, 642 (Bankr. E.D. Cal. 2020); *see also* Del. Bankr. L.R. 2014-1(b) (requiring "at least twenty-one (21) days' notice" before hearing on retention motion).  The Acthar Plaintiffs' expansive reading of *Acevedo* as a categorical bar on any retroactive approval of professional services under § 327(e) is in substantial tension with Bankruptcy Rule 6003.  *Miller,* 620 B.R. at 642-43 ("Nothing in *Acevedo* suggests the Supreme Court intended to undermine the vitality of Bankruptcy Rule 6003(a).").

## V.     CONCLUSION

For the foregoing reasons, the OCP Order will be affirmed.  An appropriate Order

follows.

March 28, 2022                             HONORABLE LEONARD P. STARK
Wilmington, Delaware                       UNITED STATES CIRCUIT JUDGE